# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SHIRLEY J. GILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 09-CV-719-WDS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Clifford J. Proud (Doc. 23). The magistrate judge recommends the Court affirm the decision of the Administrative Law Judge (ALJ) finding plaintiff Shirley J. Gill not disabled and therefore not eligible for Supplemental Security Income benefits under 42 U.S.C. § 423. Plaintiff has filed objections to the Report and Recommendation (Doc. 24), and defendant Commissioner of Social Security has filed a response (Doc. 26). The Court will review *de novo* those portions of the Report and Recommendation to which objections were filed. 28 U.S.C. § 636(b).

## BACKGROUND

Plaintiff filed an application for Social Security benefits alleging she has been disabled as of August 25, 2006. The application was denied. Thereafter, a hearing was held before ALJ Joseph W. Warzycki. He denied the application, the Appeals Council declined

to review, and the ALJ's decision became the final agency decision. Plaintiff now appeals, arguing that she meets the requirements of Listing 12.05, Mental Retardation, and is therefore presumptively disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(C).

It is easier to understand the parties' arguments after analyzing § 12.05(C). To meet the requirements of § 12.05(C), a claimant must fulfill the prerequisites: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05; *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). If those requirements are met, subsection (C) of § 12.05 requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Therefore, taken together, the introductory paragraph and subsection (C) may be broken down into three criteria:

> (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22;
> (2) a valid verbal, performance, or full scale IQ of 60–70; and
> (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

§ 12.05; *Mendez v. Barnhart*, 439 F.3d 360, 361–62 (7th Cir. 2006); *see also Adkins v. Astrue*, 226 Fed. App'x 600, 605 (7th Cir. 2007) (four critera, with "significantly subaverage general intellectual functioning" on its own). The requirement of early onset and reference to the developmental period "seem intended to limit coverage to an innate condition."

*Novy*, 497 F.3d at 709.

Here, the ALJ set out the requirements of Listing 12.05 in a more abbreviated fashion, citing *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006): "Section 12.05C . . . provides for a finding of disability due to mental retardation when an adult claimant has a valid verbal, performance or full scale IQ of 60 to 70 . . . , an onset of mental retardation impairment before age 22, and a physical or other mental impairment imposing additional and significant work-related limitation of function" (Tr. 12). He noted that although plaintiff had registered IQ scores in the 60s in 1976 and in 2006, her scores in 1981 were all above 70, "suggestive of borderline intellectual functioning at worst, not mental retardation" (Tr. 12). He reasoned that "[c]ommon sense dictates that one cannot manifest a higher degree of intelligence than what she possesses, although she can manifest a lower one" (*id.*). He found no evidence of brain disease or trauma that could explain the drop in score from 1981 to 2006. Plaintiff testified that she had trouble with big words, but she was not illiterate, which was a factor for the ALJ that suggested lower-than-normal intelligence, not mental retardation. Therefore, he concluded, the highest set of IQ scores, from May 1981, were logically the most accurate.

Plaintiff then sought review in this Court. She argues that she meets all the requirements of Listing 12.05(C) because:

> (1) Her school IQ tests ranged from 57 to 79 and demonstrate the onset of her impairment before age 22, satisfying the introductory paragraph of Listing 12.05;
> (2) her 2006 IQ test gives a valid score between 60–70, thus meeting the first prong of § 12.05(C); and
> (3) her physical impairments, including hypertension, asthma, gastroesophageal reflux disease, and mild arthralgias, limit her to light work and therefore constitute an additional and significant work-related limitation of function, thus meeting the second prong of § 12.05(C).

3

Plaintiff asks the Court to either reverse defendant's decision denying her Social Security Income and direct payment retroactive to her application date; or remand for a new hearing.

The magistrate judge recommends that the Court affirm the Commissioner's determination that plaintiff did not meet the requirements of Listing 12.05. The Report and Recommendation notes that it would not make sense to use plaintiff's IQ score from 2006 because the Listing requires onset of mental retardation before age 22. Since plaintiff had an IQ test taken before age 22 (in May 1981), the 2006 scores she received as an adult are not relevant.[1] The magistrate judge also finds that without authoritative case law or agency directive to the contrary, it could not be an error of law for the ALJ to have used the May 1981 IQ scores, which were all in the 70s. Finally, the magistrate judge determined that even if one were to accept the lower IQ scores from either 1980 or 2006, plaintiff does not meet the second part of the introductory paragraph of Listing 12.05: She has not shown "deficits in adaptive functioning."

## ANALYSIS

The standard of judicial review of this Court as to the ALJ's finding of fact has been long settled. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, the Court must determine whether the ALJ's findings are supported by substantial evidence, not whether plaintiff is in fact disabled. *See Brooks v. Chater*, 91 F.3d 972, 977–78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). The Supreme Court

---

[1] The magistrate judge also rejects the 1976 IQ score of 52 because the actual test results were not in the record. It was only a note from a teacher (Tr. 218). He also rejects the suggestion that the ALJ should have used the January 1980 IQ results because the lowest score was a verbal 57, which would actually make plaintiff

has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining substantial evidence, the entire record must be taken into account, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997) (emphasis added). The ALJ need not address every objective finding in the record for his judgment to be supported by substantial evidence; the ALJ "need only build a bridge from the evidence to his conclusion." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)). An ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).

Social Security regulations set forth a five-step inquiry to determine whether an applicant is disabled. It must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *See Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); *see also Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. §§ 404.1520, 416.920.

---

presumptively disabled under § 12.05(B), and plaintiff has not argued she meets that Listing.

In conducting the five-step inquiry, the ALJ found that the plaintiff is not presently employed and that she has impairments that are severe, but that her impairments did not meet or equal one of the listed impairments acknowledged to be conclusively disabling under step three (3).

**Significantly Subaverage General Intellectual Functioning, § 12.05**

In discussing plaintiff's IQ scores, the magistrate judge and defendant suggest that plaintiff ignores the requirement of onset before age 22. That is, the introductory paragraph of Listing 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports *onset of the impairment before age 22*." § 12.05 (emphasis added). Due to the age requirement, the magistrate judge concludes that plaintiff's 2006 IQ test measuring in the 60s is of little relevance. As discussed below, the Court cannot find support in the record that the ALJ actually evaluated the introductory paragraph.

Plaintiff's IQ results include:

> • In January 1980, plaintiff received IQ test results of verbal 57, performance 73, and full scale 63 (Tr. 220, 222).
> • In March 1981, a teacher wrote a note stating that plaintiff had scored only a 52 on an IQ test in 1976 (Tr. 218).[2]
> • In May 1981, plaintiff received IQ test scores of verbal 74, performance 79, and full scale 75 (Tr. 213).
> • In December 2006, plaintiff was agains tested and received scores of verbal 64, performance 62, and full scale 60 (Tr. 292.) The psychologist who administered this test said she considered it a valid estimate of plaintiff's abilities and that plaintiff's motivation to perform her best appeared adequate (Tr. 292).

---

[2] The magistrate judge says the 1976 test was therefore not part of the record and not before the ALJ. The ALJ did, however, comment on IQ scores in the 60s "and similar ones" in about 1976 (Tr. 12), which apparently refers to this teacher's note, even though the score is arguably not similar to ones in the 60s. He appears to have taken the 1976 test into account.

Plaintiff responds that even though the May 1981 IQ test, with scores of 74, 75, and 79, does not meet the requirements of subsection 12.05(C), it does demonstrate significantly subaverage general intellectual functioning under the introductory paragraph. Moreover, she says, there is the teacher's note mentioning a 1976 test score of 52, and the January 1980 test showing scores of 57, 63, and 73.[3]

The standard for finding "significantly subaverage general intellectual functioning" is not altogether clear because courts often consider it together with deficits in adaptive functioning. Some district courts have found that enrollment in special-education classes may show significant subaverage intellectual functioning and deficits in adaptive functioning manifested before age 22. *Anthony v. Astrue*, No. 1:10-cv-00136, 2011 WL 2728059, at *4 (S.D. Ind. July 12, 2011); *Hendricks v. Astrue*, No. 1:08-cv-0376, 2009 WL 648610, at *5–6 (S.D. Ind. March 11, 2009). In the Seventh Circuit case *Adkins v. Astrue*, the claimant failed to demonstrate either significantly subaverage general intellectual functioning or deficits in adaptive functioning before age 22 under § 12.05. The court found that "[a]lthough low IQ scores are indicative of retardation, other factors, such as the claimant's life activities and employment history, must be considered and weighed and properly play into the ALJ's analysis." *Adkins*, 226 Fed. App'x at 605. Adkins offered "minimal evidence" of his cognitive and and medical state before age 22, other than having left school after eighth grade. *Id.* The court also found that having been gainfully employed through age 41 without complaints from his employers, "further exemplifie[d] the claimant's adap-

---

[3] Plaintiff adds that, under at least one major classification system, the term "significantly subaverage general intellectual functioning" refers to a standard IQ score of 70–75 or below, taking into account the potential measurement error of ±5 points. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV), at 45 (4th ed. 1994). But the DSM-IV is not relevant here. The Commissioner rejected a proposal that its definition be used for Listing 12.05. *See Maresh*, 438 F.3d at 899.

tive abilities." *Id.* In *Adkins*, the ALJ did not discuss Listing 12.05 in his decision; however, the Seventh Circuit found that the decision was not made in a perfunctory fashion, so remand was not required. *Id.* at 605–06.

*Maresh* also provides a useful discussion of Listing 12.05. As indicated above, the Eighth Circuit in *Maresh* did not specifically discuss "significantly subaverage general intellectual functioning" or "deficits in adaptive functioning" as separate elements. Instead it collapsed them into "mental retardation initially manifested before age 22." *See Maresh*, 438 F.3d at 899–900. The court found that struggling in special-education classes; dropping out of school in ninth grade; trouble with reading, writing, and math; and having a verbal IQ score of 70, even though administered much later, at age 37, indicated that the claimant's "mental retardation initially manifested itself before age 22." *Id.* at 900.

The difficulty here is that the ALJ was not clear in his analysis of Listing 12.05. He purported to use the test set forth in *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), but he did not address (1) a valid verbal, performance or full scale IQ of 60–70, (2) onset of mental retardation impairment before age 22, or (3) a physical or other mental impairment imposing additional and significant work-related limitation of function. His analysis appears to focus on the term "mental retardation," and which IQ test accurately reflected plaintiff's abilities, perhaps assessing the first element above.

The ALJ noted that, although plaintiff had registered IQ scores in the 60s in 1976 and 2006, her scores in May 1981 were all above 70, "suggestive of borderline intellectual functioning at worst, not mental retardation" (Tr. 12). He reasoned that "[c]ommon sense dictates that one cannot manifest a higher degree of intelligence than what she possesses, although she can manifest a lower one" (*id.*). It appears that the ALJ, in making the forego-

ing observations, might have been making a credibility analysis—plaintiff can manifest a lower IQ score, but not a higher one, therefore the highest score is the most accurate. He found that plaintiff lacked credibility elsewhere in his decision (Tr. 14). He also noted no evidence of brain disease or trauma that could have explained the drop in score from 1981 to 2006. Again, that could indicate a credibility finding. At that point in his analysis, however, the ALJ should have addressed the opinion of the psychologist who administered the 2006 IQ test. The ALJ found it was common sense that the highest score was the most accurate, but the psychologist who administered the test addressed accuracy and motivation directly. She said the test was valid and an accurate reflection of plaintiff's best efforts.[4] The Court cannot find the ALJ's analysis of the case builds an accurate and logical bridge between the evidence to the result. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). In addition to the IQ scores, the ALJ considered that plaintiff had trouble with big words but was not illiterate. This suggested plaintiff had lower-than-normal intelligence, but not mental retardation. Therefore, the ALJ concluded, the highest set of IQ scores, from May 1981, were the most accurate.

The record only shows that the ALJ considered the first element, the one he quoted from *Maresh*, whether plaintiff had a valid IQ score between 60–70. The Court **FINDS**, however, that it was error for the ALJ's ruling to be void of any consideration of whether plaintiff had a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.[5] In *Adkins*, the

---

[4] "[T]he narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." § 12.00(D)(6)(a).

[5] "Although low IQ scores are indicative of retardation, other factors, such as the claimant's life activities and employment history, must be considered and weighed and properly play into the ALJ's analysis." *Adkins*, 226 Fed. App'x at 605.

claimant offered only "minimal evidence" of his cognitive and and medical state before age 22, other than having left school after eighth grade. *Adkins*, 226 Fed. App'x at 605.

Here, plaintiff offers the IQ tests before she reached age 22, and that she left school after eleventh grade (Tr. 9). However, the fact that she scored over 70 on an IQ test before age 22 may indicate she did not meet the requirement of significantly subaverage general intellectual functioning during the developmental period. The common-sense analysis the ALJ used seems reasonable if only applied to the early test scores. But he did not mention any of plaintiff's life activities or employment history in his analysis. In *Adkins*, the claimant was gainfully employed through age 41, which "further exemplifie[d] the claimant's adaptive abilities." Plaintiff has only a very sparse work record, with no earnings for most years (Tr. 10), which casts some doubt on her adaptive abilities.[6]

In addition, the ALJ's opinion relies almost entirely on the IQ scores, so it appears he evaluated subsection 12.05(C) rather than the introductory paragraph. Yet, § 12.05(C) by its plain language requires only "a valid verbal, performance, or full scale IQ" of 60–70.

**Deficits in Adaptive Functioning**

Plaintiff asserts that the magistrate judge erred in recommending the ALJ's finding that plaintiff had not shown deficits in adaptive functioning required by the introductory paragraph of § 12.00. Deficits in adaptive functioning "denotes inability to cope with the challenges of ordinary everyday life." *Novy*, 497 F.3d at 710. In *Novy*, the Seventh Circuit affirmed the ALJ's finding that the claimant lived on her own, took care of three children without help, fed them, paid her bills, and avoided eviction. *Id.* Plaintiff here argues that her children fix their own breakfast and she has a friend help her with laundry, grocery

---

[6] Plaintiff was also in special-education classes (Tr. 9, 24–25), which tends to show significant subaverage intellectual functioning and deficits in adaptive functioning manifested before age 22. *See, e.g., Anthony,*

shopping, and sometimes cooking. The ALJ's decision does not mention help from a friend. It finds that plaintiff can feed, dress, bathe herself, and prepare her children for school each day, as well as do typical household chores such as cooking, laundry, dish washing, bed making, vacuuming, mopping, sweeping, and grocery shopping (Tr. 10). The Report and Recommendation finds that plaintiff has not demonstrated deficits in adaptive functioning and that the record does not establish it. For instance, the magistrate judge points out that Dr. Cottone concluded that plaintiff has very little limitation in her mental functioning as long as she is restricted to simple, repetitive tasks. And, the magistrate judge observes, citing *Novy*, that persons with an IQ between 60–70 can sustain full-time employment. Therefore, the Report and Recommendation concludes that the ALJ's determination that plaintiff did not meet the criteria of Listing 12.05 is supported by substantial evidence.

The problem, the Court finds, is that the ALJ does not address deficits in adaptive functioning at all. The Seventh Circuit recently criticized the government's lawyers for defending denials of Social Security benefits by relying on evidence not relied on by the ALJs, in violation of *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943). *See Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). The doctrine of harmless error applies on judicial review such that "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record . . . then remanding is a waste of time." *Spiva*, 628 F.3d at 353 (internal citations omitted); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (government violated the *Chenery* principle by defending ALJ's decision on a ground he himself did not mention). It is not

enough to find evidence in the record to establish that the ALJ "*might* have reached the same result . . . ." *Spiva*, 628 F.3d at 353.

As discussed above, the ALJ's analysis of Listing 12.05 consisted of only one paragraph and only discussed the IQ tests and literacy (Tr. 12). Thus, even if there is substantial support in the record such that the ALJ might reach the same result on remand, the Court does not find that the ALJ has articulated a reasoned basis for denying benefits under Listing 12.05 or that the ALJ's decision is overwhelmingly supported by the record such that remand is a waste of time.

<u>CONCLUSION</u>

Accordingly, the Court **DENIES** the Report and Recommendation (Doc. 23) and **REMANDS** this matter to the Commissioner for a determination whether plaintiff meets Listing 12.05. The Court finds that the decision of the Commissioner errs in not properly analyzing the Listing. The ALJ is instructed to make his credibility findings clearer in the record if his decision is made on that basis. For judicial economy, if the Commissioner ultimately denies benefits and the matter is again appealed to this Court, it should be assigned to the undersigned judge.

**IT IS SO ORDERED.**

**DATED:** <u>October 4, 2011</u>

<u>/s/ WILLIAM D. STIEHL</u>
**DISTRICT JUDGE**